IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
RUBEN O'DELL BOULWARE,        ) No. C 09-02792 CW (PR)
                              )
          Plaintiff,          ) ORDER DENYING IN PART AND GRANTING IN
                              ) PART DEFENDANT'S MOTION FOR SUMMARY
     v.                       ) JUDGMENT; AND REFERRING CASE TO PRO
                              ) SE PRISONER SETTLEMENT PROGRAM
DAVID M. DUNSTAN              )
                              ) (Docket no. 13)
          Defendant.          )
_____)
```

INTRODUCTION

On June 24, 2009, Plaintiff Ruben O'Dell Boulware, a former state prisoner,[1] filed a pro se civil rights action under 42 U.S.C. § 1983 stemming from events that occurred when he was incarcerated at the Correctional Training Facility (CTF) in Soledad, California. Plaintiff alleges that Defendant CTF Correctional Officer D. M. Dunstan retaliated against him for filing inmate grievances at CTF and exercising his constitutional right of access to the courts. Plaintiff seeks $100,000 in money damages.

Plaintiff raised the same retaliation claim against Defendant in a previous action before this Court, Case no. C 06-2733 CW (PR). On December 18, 2007, Plaintiff's retaliation claim in Case no. C 06-2733 CW (PR) was dismissed without prejudice to re-filing it in a new action because he "did not exhaust his administrative remedies . . . ." (Dec. 18, 2007 Order in Case no. C 06-2733 CW (PR) at 9.)

On June 24, 2009, having exhausted his administrative remedies, Plaintiff re-filed his retaliation claim in the present action.

_____

[1]On January 10, 2011, Plaintiff stated that he was released from prison on "November 25, 2011;" however, the Court assumes he meant "November 25, 2010."

In an Order dated May 7, 2010, the Court found cognizable Plaintiff's retaliation claim against Defendant.

On July 12, 2010, Defendant answered the complaint and demanded a jury trial.

On November 18, 2010, Defendant filed a motion for summary judgment. Plaintiff did not file an opposition to the motion.[2] In lieu of a reply, Defendant's attorney filed a declaration indicating that no opposition had been filed by Plaintiff and requesting the Court to grant the motion for summary judgment.

For the reasons set forth below, the Court GRANTS in part Defendant's motion for summary judgment and DENIES it in part.

FACTUAL BACKGROUND

All facts are undisputed unless otherwise noted.

On July 19, 2005, a riot occurred between African-American and Southern Hispanic inmates at CTF. (Decl. Delong, Ex. B; Decl. Dunstan ¶ 5.)

On July 21, 2005, Plaintiff was transferred to CTF. (Decl. Delong, Ex. A.)

From July 21, 2005 through May, 2006, Plaintiff was incarcerated in Shasta Hall at CTF, where Defendant worked as a correctional sergeant. (Decl. Dunstan ¶¶ 3-4.) Defendant's duties included ensuring that correctional officers as well as inmates complied with California Department of Corrections and Rehabilitation (CDCR) policies and procedures, teaching new officers about these policies and procedures, assisting with

_____

[2] On January 26, 2011, Plaintiff filed a request for an extension of time to file his opposition to the motion for summary judgment. The Court granted Plaintiff's request and directed him to file his opposition no later than February 20, 2011. The deadline has passed and Plaintiff has not filed an opposition or asked for another extension of time to do so.

**United States District Court**
For the Northern District of California

emergencies (medical and non-medical), helping with cell searches, conducting first-level reviews of inmate appeals, and documenting inmate activities on informational chronos (CDC 128-B report). (<u>Id.</u> ¶ 4.)

Between August, 2005 and December, 2005, Plaintiff filed several 602 inmate appeal forms (602 appeals). (Decl. Delong, Exs. A-D.) Plaintiff alleges that Defendant retaliated against him for filing these grievances by (1) instructing prison staff to deny him clean clothing from July 21, 2005 through August 15, 2005; (2) threatening him on September 7, 2005; (3) conducting a harassing search of his cell and seizing his property on November 29, 2005; and (4) drafting allegedly fabricated CDC 128-B reports and Rules Violation Reports (RVR) against him on November 9 and 28, 2005 as well as on January 18, 2006, as further explained below.

I.   Deprivation of Clean Clothing

Plaintiff claims that CTF "staff (including Defendant Dunstan)" intentionally withheld from him a change of clean clothing from July 21, 2005 through August 15, 2005. (Decl. Delong, Ex. A; Compl. at 5.) Plaintiff claims he made "numerous attempts to resolve this issue by consulting with (3) different C/Os and (2) sergeants [but] it became unequivocally clear that the appellant was intentionally being mislead [sic]." (Decl. Delong, Ex. A.)

Plaintiff then filed his first two 602 appeals at CTF.  On August 8, 2005, Plaintiff filed a 602 appeal (CTF-05-02601) alleging that Defendant and other officers orchestrated the attack of two African-American inmates by Southern Hispanic inmates during the prison riot on July 19, 2005. (Decl. Delong, Ex. B; Compl. at 5.)  That 602 appeal was denied at the first level of review on

October 15, 2005.  (Decl. Delong, Ex. B.)  Plaintiff did not appeal the denial to the other levels of review.  Then, on August 15, 2005, Plaintiff filed a second 602 appeal (CTF-05-02660) alleging that prison staff, with no specific mention of Defendant, had intentionally withheld a change of clean clothing since he arrived on July 21, 2005.  (Decl. Delong, Ex. A.)  In his appeal, Plaintiff asked for clean clothing and compensation equal to fifty dollars for each day that he went without clean clothing. (<u>Id.</u>)  On the day the second 602 appeal was filed, CTF Correctional Sergeant Malone filed an informal response and granted Plaintiff's request for clean clothing.  (<u>Id.</u>)  Sergeant Malone denied Plaintiff's request for money damages as "beyond his power to grant." (<u>Id.</u>)  Later that same day, Plaintiff was provided with a change of clean clothing.  (<u>Id.</u>)

II.   September 7, 2005 Threat

On September 7, 2005, Defendant accompanied CTF Correctional Officer Martin to Plaintiff's cell in order to obtain his signature on a Rights and Responsibilities Statement, in connection with the August 8, 2005 602 appeal, which is required for inmates who allege staff misconduct.  (Decl. Dunstan ¶ 7.)

Defendant claims that he did not speak with Plaintiff during this incident but was present only to train Officer Martin on procedures.  (<u>Id.</u>)  Plaintiff refused to sign the Rules and Responsibilities Statement.  (<u>Id.</u>)  Defendant then instructed Officer Martin on how to document Plaintiff's refusal to sign the statement.  (<u>Id.</u>)

In contrast, Plaintiff alleges that during the encounter, Defendant "came to the Plaintiff[']s cell yelling and threatening to make the Plaintiff'[s] stay at CTF difficult [and]

4

uncomfortable." (Compl. at 5.)

III. November 29, 2005 Cell Search

On November 29, 2005, Defendant was training several new officers on how to conduct cell searches. (Decl. Dunstan ¶ 11.) Plaintiff's cell, selected at random, was one of the cells that Defendant and other officers searched. (Id.) While conducting the search, Defendant found a handwritten note that appeared to have the names of terrorist organizations and political and religious leaders. (Id.) Next to the names were numbers, which appeared to Defendant to constitute a code. (Id.) Defendant confiscated the document, along with fourteen other pages, a shower curtain, wires, and a dictionary from the prison library. (Id., Ex. I.) Defendant provided the suspicious documents to the Investigative Services Unit, as required by CDCR policy. (Id. ¶ 11.) Plaintiff received a property receipt for all items taken during the search, all of which, except for the pages with code, were returned to Plaintiff the next day. (Id.)

In contrast, Plaintiff claims that Defendant "conducted a retaliatory cell search confiscating religious items, legal materials and personal property." (Compl. at 7.)

IV. Filing of Fabricated Reports

Plaintiff claims that Defendant drafted a fabricated CDC 128-B report and two fabricated RVRs on November 9, 2005,[3] November 28, 2005 and January 18, 2006, in retaliation for his filing grievances. (Compl. at 7-9.)

On November 8, 2005, Defendant observed a "modesty curtain" hanging in Plaintiff's cell and obstructing the view into it.

_____

[3] The Court's May 7, 2010 Order of Service identified November 7, 2005 as the day when Defendant filed an allegedly "fabricated" RVR; in fact, it was on November 9, 2005.

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

(Decl. Dunstan ¶ 9.)  He instructed Plaintiff to take it down.
(Id.)  The next day, November 9, 2005, Defendant noticed that the
curtain was still obstructing the view into Plaintiff's cell.
(Id.)  Defendant therefore filed an RVR against Plaintiff for
refusing to comply with a direct order.  (Id., Ex. C.)  Plaintiff
characterizes the incident leading to the RVR as a "fabrication."
(Compl. at 7.)  At a hearing on December 8, 2005 in response to
this RVR, the hearing officer did not find Plaintiff guilty of
refusing to comply with a direct order and instead concluded that
Plaintiff had committed an administrative level violation.  (Decl.
Dunstan ¶ 9, Compl. at 8.)  No adverse action was taken against
Plaintiff.  (Id.)

On November 28, 2005, Plaintiff refused to leave his cell for
a medical appointment.  (Decl. Dunstan ¶ 10.)  Defendant approached
Plaintiff's cell and told him that he had a right to decline
medical treatment so long as he completed a form that recorded his
refusal.  Plaintiff refused to exit his cell or complete the form.
(Id.)  Defendant then filed a CDC 128-B report noting Plaintiff's
failure to comply with orders.  (Id., Ex. D.)  Plaintiff alleges
that this report was "fabricated." (Compl. at 7.)  Neither
Defendant nor any other prison official disciplined Plaintiff as a
result of this incident.  (Decl. Dunstan ¶ 10.)

On January 18, 2006, Defendant attempted to interview
Plaintiff about a 602 appeal that he had filed, in response to the
November 29, 2005 cell search, in which he alleged that items taken
during the search were lost or damaged.  (Decl. Dunstan ¶ 13.)
Plaintiff refused to answer Defendant's questions.  (Id.)
Plaintiff then accused Defendant of being a "white supremacist" and
told him, "I'm going to bury your ass when I get out of here."

6

(Id.)  In response, Defendant filed an RVR because Plaintiff had threatened force against him in violation of § 3005(d) of Title 15 of the California Code of Regulations.  (Decl. Dunstan ¶ 13, Ex. I.)  On March 1, 2006, at a hearing in response to this RVR, a hearing officer found Plaintiff guilty of threatening staff.  (Id.) Plaintiff was not assessed any forfeiture of time credits because the hearing was not conducted within thirty days of the issuance of the RVR.  (Id.)  Instead, Plaintiff was "counseled and reprimanded."  (Id.)

DISCUSSION

I.   Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in

United States District Court
For the Northern District of California

1  evidence.  Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th

2  Cir. 1995).

3       Material facts which would preclude entry of summary judgment

4  are those which, under applicable substantive law, may affect the

5  outcome of the case.  The substantive law will identify which facts

6  are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

7  (1986).  Where the moving party does not bear the burden of proof

8  on an issue at trial, the moving party may discharge its burden of

9  showing that no genuine issue of material fact remains by

10 demonstrating that "there is an absence of evidence to support the

11 nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden

12 then shifts to the opposing party to produce "specific evidence,

13 through affidavits or admissible discovery material, to show that

14 the dispute exists."  Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409

15 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  A complete

16 failure of proof concerning an essential element of the non-moving

17 party's case necessarily renders all other facts immaterial.

18 Celotex, 477 U.S. at 323.

   II.  Evidence Considered

19      A district court may only consider admissible evidence in

20 ruling on a motion for summary judgment.  See Fed. R. Civ. P.

21 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

22 In support of Defendant's motion for summary judgment, declarations

23 along with exhibits have been filed by Defendant and by Allison

24 DeLong, Assistant to the CTF Litigation Coordinator.

25      Plaintiff verified his complaint filed on June 24, 2009 by

26 signing it under penalty of perjury.  Therefore, for the purposes

27 of this Order, the Court will treat Plaintiff's original complaint

28 filed on November 3, 2008 as an affidavit in opposition to

8

**United States District Court**
For the Northern District of California

Defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Schroeder</u>, 55 F.3d at 460 & nn.10-11.

III. Retaliation

Prisoners have First Amendment rights to file prison grievances, and to pursue civil rights litigation in the courts. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567 (9th Cir. 2005).  Prisoners may not be retaliated against for exercising their right of access to the courts, <u>Schroeder</u>, 55 F.3d at 461, which extends to established prison grievance procedures, <u>Bradley v. Hall</u>, 64 F.3d 1276, 1279 (9th Cir. 1995), <u>abrogated on other grounds by</u> <u>Shaw v. Murphy</u>, 532 U.S. 223 (2001).  Without these constitutional guarantees, "inmates would be left with no viable mechanism to remedy prison injustices."  <u>Rhodes</u>, 408 F.3d at 567.  Because "purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  <u>Id.</u>; <u>see also</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).

Retaliation by a state actor for a prisoner's exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper. <u>See</u> <u>Mt. Healthy City School Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 283-84 (1977).  Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.  <u>See</u> <u>Perry v. Sindermann</u>, 408 U.S. 593, 597 (1972).  Within the "prison context," a "viable claim of First Amendment retaliation entails five basic elements:  (1) An assertion that a

9

state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes, 408 F.3d at 567-68 (footnote omitted). Accordingly, a prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. See Pratt, 65 F.3d at 806.

While the prisoner must allege a defendant's actions caused him some injury, Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), the prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim. See Rhodes, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough. Id. at 569 (destruction of inmate's property and assaults on inmate enough to chill inmate's First Amendment rights and state retaliation claim, even if inmate filed grievances and a lawsuit).

The prisoner bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt, 65 F.3d at 806. At that point, the burden shifts to the prison official to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. See Schroeder, 55 F.3d at 461-62.

10

United States District Court

For the Northern District of California

Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence.  Bruce v. Ylst, 351 F.3d 1283, 1288-89 (9th Cir. 2003).  However, retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'"  Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).  In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  Id.

As mentioned above, Plaintiff alleges in his complaint that Defendant retaliated against him for filing grievances by (1) depriving him of clean clothing; (2) threatening him; (3) conducting a harassing cell search; and (4) drafting fabricated reports.

A.   Deprivation of Clean Clothing

Plaintiff appears to argue that Defendant denied him clean clothing from July 21, 2005 through August 15, 2005 in retaliation for filing grievances.  (Compl. at 5.)  However, Plaintiff's claim fails because he has not created a triable issue of material fact as to whether Defendant was involved in this deprivation or even knew of it at the time that it occurred.  Plaintiff makes a conclusory statement that CTF "staff (including Defendant Dunstan)" intentionally withheld clean clothing from him.  (Id.)  However, it was no part of Defendant's duties to provide clothing to prisoners. (Decl. Dunstan ¶ 6.)   Moreover, Plaintiff's August 15, 2005 602

11

appeal does not even mention Defendant by name.  (Decl. DeLong, Ex. A.)

Nor does Plaintiff present any evidence of a nexus establishing that, even if Defendant were involved, Defendant's involvement in the deprivation was in retaliation for constitutionally protected activity.  The alleged deprivation had already started before Plaintiff filed the August 8, 2005 602 appeal relating to the riot.  Furthermore, Plaintiff was given immediate relief on the same day he filed the August 15, 2005 602 appeal relating to the denial of clean clothing.

Because Plaintiff fails to provide evidence that Defendant was involved in this alleged deprivation, and because Plaintiff fails to provide evidence of a nexus between the deprivation and a retaliatory motive on Defendant's part, Plaintiff has not created a genuine dispute of material fact on this issue.  Defendant is therefore entitled to summary adjudication of Plaintiff's retaliation claim to the extent it is based on this ground.

B.    September 7, 2005 Threat

Plaintiff has established a triable issue with respect to his claim that Defendant threatened him on September 7, 2005 in retaliation for filing the August 8, 2005 602 appeal, in which he named Defendant as one of the officers who orchestrated an attack on two African-American inmates during the July 19, 2005 riot.

First, while Defendant denies making such a threat, Plaintiff proffers evidence that he did, and has created a genuine dispute of material fact as to whether Defendant's threat constituted adverse action, as required by Rhodes, 408 F.3d at 567.  "The mere threat of harm can be an adverse action, regardless of whether it is

United States District Court

For the Northern District of California

carried out because the threat itself can have a chilling effect." Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) (emphasis in original).  The threat need not be explicit or specific.  Id. Rather the question for the court is whether a reasonable factfinder could interpret the statements as '"intimating that some form of punishment or adverse regulatory action would follow.'" See id. (quoting Okwedy v. Molinari, 333 F.3d 339, 343 (2d Cir. 2003)).  Viewing the facts in the light most favorable to Plaintiff, his claim that Defendant threatened to make his stay at CTF "difficult [and] uncomfortable" constitutes sufficient evidence of an "adverse action."  See id. at 1269 (threat of discipline or transfer to another prison was sufficient to support retaliation claim).

Second, Plaintiff produces sufficient evidence to show a nexus between the adverse action and Plaintiff's filing the August 8, 2005 602 appeal and exercising his constitutionally protected right of access to the courts.  Plaintiff claims Defendant made the threat while attempting to obtain his signature on a Rights and Responsibilities Statement in connection with the August 8, 2005 602 appeal.  Thus, Defendant must have been aware that Plaintiff had filed a grievance against him.  Plaintiff has produced sufficient evidence of retaliatory motive because this awareness and the timing of the threat -- thirty days after the filing of the grievance -- create a triable issue as to whether Plaintiff's filing of the grievance motivated Defendant's threat to make Plaintiff's stay at CTF "uncomfortable [and] difficult."  See Bruce, 351 F.3d at 1288-89 (retaliatory motive may be shown by the timing of the allegedly retaliatory act, as well as direct evidence).

United States District Court
For the Northern District of California

Third, Plaintiff has created a triable issue as to whether Defendant's threat would have chilled a person of ordinary firmness from exercising his or her First Amendment rights.  Defendant argues that Plaintiff has "fail[ed] to present any evidence that the alleged 'intimidation' chilled his First Amendment rights," especially in light of the number of grievances Plaintiff filed after the incident.  (Mot. for Summ. J. at 12.)  This argument is unavailing because it assumes a subjective standard for determining whether Plaintiff's constitutional rights were chilled.  The Ninth Circuit, however, endorses an objective standard whereby a plaintiff must show that an adverse action would chill or silence a person of "ordinary firmness" from future First Amendment activities.  See Rhodes, 408 F.3d at 568; Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999) ("Mendocino II").  Verbal threats and "bad-mouthing" do not always violate a plaintiff's First Amendment rights.  See Coszalter v. City of Salem, 320 F.3d 968, 975-76 (9th Cir. 2003).  But not all threats are non-actionable: if a person of ordinary firmness would have been chilled, a threat is actionable.  See Mendocino II, 192 F.3d at 1300.  Because a person of ordinary firmness would have been chilled by Defendant's threat to make that person's stay at CTF "difficult [and] uncomfortable," Plaintiff has created a triable issue of fact on this issue.

Finally, Plaintiff has shown the absence of a legitimate penological purpose for the threat that Defendant allegedly made against him.  Defendant has not provided evidence showing that, if he did make the threat, it advanced legitimate penological goals and was narrowly tailored to meet those goals.  Such a threat could not have been made to preserve institutional order because it was

14

United States District Court

For the Northern District of California

allegedly made to intimidate Plaintiff while asking him to sign a form relating to a grievance in which Defendant was named.

Accordingly, Plaintiff has created a genuine dispute of material fact as to whether Defendant retaliated against him for filing inmate grievances by threatening him during the September 7, 2005 incident.  Therefore, Defendant is not entitled to summary adjudication of Plaintiff's retaliation claim to the extent it is based on this incident.

C.    November 29, 2005 Cell Search

Plaintiff fails to create a genuine dispute of material fact as to whether Defendant's search of his cell on November 29, 2005 was retaliatory because his allegation that the cell search amounts to an adverse action is conclusory.  Defendant has provided sufficient evidence that his actions advanced legitimate penological goals and were narrowly tailored to meet those goals. First, random cell searches are permissible to maintain institutional security in state prisons pursuant to § 3287 of Title 15 of the California Code of Regulations, which states in part:

> Inspections of inmate cell or living areas, property,
> work areas, and body shall be conducted on an
> unannounced, random basis as directed by the
> institution head.  Such inspections shall be conducted
> no more frequently than necessary to control
> contraband, recover missing or stolen property, or
> maintain proper security of the institution.

Cal. Code Regs. tit. 15, § 3287.  Here, Plaintiff's cell was chosen at random, as were forty percent of cells at CTF in the month of November, 2005.  (Decl. Dunstan, Ex. E.)  Second, in addition to maintaining institutional security, Defendant conducted the search as part of a training program for new officers.  (Decl. Dunstan ¶ 4.)  Finally, Defendant seized materials that he legitimately

15

United States District Court

For the Northern District of California

believed were causes for concern, including a page with the names of terrorist organizations on it.  He provided Plaintiff a property receipt and returned all items except for the suspicious documents the next day.  (Id.)  In the absence of evidence to the contrary, the Court finds that Defendant conducted the cell search for legitimate penological reasons.  Accordingly, Defendant is entitled to summary judgment as to this portion of Plaintiff's retaliation claim.

D.   Filing of Fabricated Reports

Plaintiff has not created a triable issue as to whether Defendant drafted a fabricated CDC 128-B report on November 28, 2005 and fabricated RVRs on November 9, 2005 and January 18, 2006. First, Plaintiff does not show, except by conclusory statements in his complaint, that any of these reports were fabricated.  (Compl. at 5-9.)  To the contrary, at a hearing on December 8, 2005 in response to the November 9, 2005 RVR, a hearing officer found that Plaintiff had committed an administrative level violation.  (Decl. Dunstan ¶ 9, Ex. C.)  Similarly, at a March 1, 2006 hearing conducted in response to the January 18, 2006 RVR, the hearing officer found Plaintiff guilty of violating prison rules by threatening staff.  (Id. ¶ 13, Ex. I.)

Second, Plaintiff fails to present evidence that, on the basis of these reports, prison staff, including Defendant, took any disciplinary action against him.  (Compl. at 5-9.)  Hence, he fails to demonstrate adverse action, as required by Rhodes, 408 F.3d at 567.  Moreover, even if there were any adverse action, Plaintiff does not explain how these reports chilled his First Amendment Rights.  These reports were filed for legitimate penological

16

**United States District Court**
For the Northern District of California

reasons and resulted in no deprivation or status change; therefore, they would not deter a person of ordinary firmness from exercising his or her First Amendment rights.

Third, Plaintiff does not establish any causal nexus between the filing of these reports and his constitutionally protected conduct. Plaintiff's allegation that Defendant fabricated the November 28, 2005 CDC 128-B report does not specify that this alleged fabrication arose from retaliatory motives. (Compl. at 7.) Although Plaintiff alleges in a conclusory fashion that the January 18, 2006 RVR was in "direct retaliation" for his filing grievances, he provides no other evidence showing the nexus between Defendant's actions and his constitutionally protected activity. (Id. at 9.) Finally, Plaintiff does not suggest retaliation as the reason that the Defendant allegedly falsified the November 9, 2005 RVR; instead, he makes another conclusory statement: "Defendant Dunstan issued another fabricated rule violation #V1-11-05-014 alleging that the Plaintiff committed a rule violation." (Id. at 7; Decl. Dunstan, Ex. C.)

Fourth, Plaintiff fails to meet his burden of providing evidence of the absence of legitimate correctional goals for Defendant's filing of the reports. See Pratt, 65 F.3d at 806. Defendant filed these reports in accordance with CDRC protocol for documenting statements and incidents involving inmates and ensuring compliance with CDRC rules and procedures. (Decl. Dunstan ¶¶ 2-3.) In the absence of evidence to the contrary, Defendant has provided sufficient evidence to show that filing these reports advanced legitimate penological goals and were narrowly tailored to meet those goals. Accordingly, Defendant is entitled to summary

17

**United States District Court**

For the Northern District of California

adjudication of Plaintiff's retaliation claim to the extent it is based on this ground.

In sum, Plaintiff has failed to carry his burden of raising a genuine issue of fact to support his claims that certain actions taken by Defendant -- depriving him of clean clothing, filing fabricated reports, and conducting a search of his cell -- rose to the level of unconstitutional retaliation.  Plaintiff, however, has produced sufficient evidence to make out a retaliation claim based on the threat made by Defendant on September 7, 2005.

IV.   Qualified Immunity

In the alternative, Defendant claims that he is entitled to summary judgment based on qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in qualified immunity analysis is:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established."  Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by Saucier and holding

United States District Court
For the Northern District of California

that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful.  Rodis v. City and County of S.F., 558 F.3d 964, 970-71 (9th Cir. 2009).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier, 533 U.S. at 202.

"[T]he prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes."  Pratt, 65 F.3d at 806 & n.4.  Here, under the second prong of Saucier, the constitutional violation of which Plaintiff complains is "clearly established."

With respect to Plaintiff's claims that Defendant deprived him of clean clothing, filed fabricated reports, and conducted a harassing cell search, the Court has found that Defendant's actions do not rise to the level of a constitutional violation.  However, even if Plaintiff's rights had been violated, Defendant is entitled to qualified immunity because a reasonable officer in Defendant's position would have believed that his actions were lawful in the circumstances he confronted.  First, a reasonable officer in Defendant's position would not have believed that denying Plaintiff clean clothing amounted to retaliation for filing a 602 appeal because the August 8, 2005 602 appeal was filed after the alleged deprivation.  Second, officers may conduct random cell searches in order to maintain security at the prison.  See Cal. Code Regs. tit. 15, § 3287.  Part of Defendant's duties was to train officers on

19

how to conduct such searches properly.  Consequently, because Defendant was following CDCR policy and carrying out his official duties, a reasonable officer in Defendant's position would have believed that searching Plaintiff's cell was lawful.  Finally, Defendant drafted the CDC 128-B report and the two RVRs as part of his duties as a correctional officer in accordance with Title 15 of the California Code of Regulations, namely § 3005(a)-(b), which allows prison staff to discipline inmates for failing to comply with orders, and § 3005(d)(1), which forbids inmates from threatening staff.  Because Defendant was following procedure and carrying out his duties, a reasonable officer in his position would have believed that his actions were lawful.  In sum, Defendant is entitled to qualified immunity with respect to Plaintiff's claims that Defendant retaliated against him by depriving him of clothing, filing fabricated reports against him, and conducting a harassing search of his cell.

However, with respect to the September 7, 2005 threat, a reasonable officer in Defendant's position would not have thought it was lawful to threaten to make an inmate's stay at a prison "difficult [and] uncomfortable" in retaliation for filing a grievance in which that officer was named.  Accordingly, Defendant is not entitled to qualified immunity as to Plaintiff's retaliation claim stemming from the September 7, 2005 threat.

CONCLUSION

For the foregoing reasons,

1.   Defendant's motion for summary judgment (docket no. 13) is DENIED as to Plaintiff's retaliation claim to the extent it is based on Defendant's September 7, 2005 threat and GRANTED in all

20

United States District Court

For the Northern District of California

other respects.

2.    The Northern District of California has established a Pro Se Prisoner Settlement Program.   Certain prisoner civil rights cases may be referred to a magistrate judge for a settlement conference.   The Court finds that a referral is in order now that one part of Plaintiff's retaliation claim has survived summary judgment.   Thus, this case is REFERRED to Magistrate Judge Vadas for a settlement conference.

The conference shall take place within one-hundred-twenty (120) days of the date of this Order, or as soon thereafter as is convenient to the magistrate judge's calendar.   Magistrate Judge Vadas shall coordinate a time and date for the conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, file with the Court a report regarding the conference.

The Clerk shall provide a copy of this Order, and copies of documents from the court file that are not accessible electronically, to Magistrate Judge Vadas.   The Clerk shall also send a copy of this Order to the parties.

3.    The Clerk shall prepare an Order for Pretrial Preparation, setting the case for a pretrial conference and a three-day jury trial.

4.    This Order terminates Docket no. 13.

IT IS SO ORDERED.

Dated: 8/9/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


RUBEN ODELL BOULWARE,

         Plaintiff,

  v.

D M DUNSTAN et al,

         Defendant.
_____/

Case Number: CV09-02792 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 9, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Ruben Odell Boulware

5558 Dairy Avenue

Long Beach, CA 90805


Dated: August 9, 2011

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

22

United States District Court
For the Northern District of California